992 P.2d 196

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Benjamin JENKINS, Defendant– Appellant.**

No. 23947.

Court of Appeals of Idaho.

Dec. 1, 1999.

Review Denied Feb. 3, 2000.

748

Radin & Webb, Idaho Falls, for appellant. John L. Radin argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

PERRY, Chief Judge.

Benjamin Jenkins appeals from the judgments of conviction and concurrent unified life sentences, with fifteen years fixed, for second degree murder, I.C. § 18–4003(g), and ten years fixed for robbery, I.C. § 18–6501. For the reasons set forth below, we affirm.

## I.

### BACKGROUND

Jenkins testified to the following facts at the trial of Thomas P. Lundquist, one of Jenkins' co-defendants. On November 10, 1995, Lundquist and Christopher T. Shanahan asked Jenkins if he wanted to join them on their trip to Las Vegas, Nevada. In preparing for that trip, Jenkins and Shanahan obtained three guns from Jenkins' home. The weapons included a double-barrel shotgun, a single-barrel shotgun and a .22 caliber rifle. After retrieving the weapons from Jenkins' home, the three said goodbye to another friend who refused to go with them and proceeded to Lundquist's residence. At Lundquist's home, Jenkins assisted Shanahan in sawing off the barrels and the stocks of the guns. Ammunition was procured at the Lundquist residence, and Jenkins assisted in loading the weapons. Shanahan also obtained two gasoline cans and a pair of gloves from the garage at the Lundquist home.

The weapons were test fired after they were altered. One of the shotguns failed to operate properly. Therefore, after leaving the Lundquist residence, the three individuals went back to Jenkins' home where he and Shanahan obtained another weapon. Shanahan then drove the three in his car to the Grant store. On the way to the Grant store, Jenkins inquired as to where Shanahan was driving. Shanahan told Jenkins that they were going to the Grant Store and that Jenkins should go into the store to distract the clerk while Shanahan took cigarettes and cash. When Shanahan stopped near the store, Lundquist asked Jenkins to hand him a shotgun so that if any witnesses came during the robbery, Lundquist could shoot them. Jenkins stated that he would not

shoot anyone, and Lundquist indicated that it would not be necessary. Jenkins agreed to go into the store and distract the clerk to effectuate the robbery.

After waiting for a delivery person to leave, Shanahan drove to the fuel pumps located at the store. Upon filling the car and two gas cans and waiting for another individual to leave, Shanahan gave Jenkins the go-ahead, and Jenkins entered the store. Jenkins proceeded to the area where the clerk, Fidela Tomchak, was working. Jenkins was in the aisle behind Tomchak, approximately four feet away from her. Tomchak saw Jenkins and smiled at him, and Jenkins smiled back. Shanahan then entered the store. Jenkins saw that Shanahan was wearing gloves and carrying the .22 caliber sawed-off rifle behind his legs. Shanahan moved down the same aisle as Jenkins, to within three feet of Tomchak. Jenkins then saw Shanahan stand behind Tomchak, lift the gun, hesitate for a minute, then raise the gun again and point it at Tomchak's head. At this time, Jenkins turned his head and Shanahan fired, killing Tomchak. Jenkins stole beer and exited the store. After Shanahan removed cash from the register and cigarettes, and returned to the store to retrieve his weapon, the three individuals left the scene and drove to Las Vegas.

Eventually, all three individuals were apprehended. Jenkins was charged with first degree felony murder and robbery.[1] Pursuant to a written plea agreement with the state, Jenkins pled guilty to second degree murder and robbery. The plea agreement permitted both the state and Jenkins to present evidence at sentencing. Although the state was free to argue for whatever sentence it deemed appropriate, it agreed to recommend a lesser sentence for Jenkins than what it would seek for either Shanahan or Lundquist due to Jenkins' lower level of involvement. A presentence investigation report was prepared, and the district court heard testimony during the sentencing hearing. The district court issued extensive findings of fact and imposed a unified life sentence, with fifteen years fixed, for second degree murder and a concurrent unified life sentence, with ten years fixed, for robbery. Jenkins appeals.[2]

## II.

## ANALYSIS

### A. Cruel and Unusual Punishment

■ Jenkins contends that his sentences constitute cruel and unusual punishment and thus violate both the United States Constitution and the Idaho Constitution. When reviewing whether a sentence imposed under the Uniform Sentencing Act constitutes cruel and unusual punishment, this Court treats the minimum period of incarceration as the duration of confinement. *State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *State v. Daniel*, 127 Idaho 801, 804, 907 P.2d 119, 122 (Ct.App.1995). Therefore, the Court will analyze only whether the fixed portion—fifteen years—of Jenkins' concurrent sentences violates the state and federal constitutions.

■ The Idaho Supreme Court, in *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992), recognized the proportionality test under the Eighth Amendment, as dictated by *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and modified by *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Hence, it is the modified test as stated in *Brown* that is the current legal standard for review of a claim of cruel and unusual punishment in Idaho. *State v. Robertson*, 130 Idaho 287, 288, 939 P.2d 863, 864 (Ct.App.1997). As the *Brown* Court stated:

> We limit our proportionality analysis to death penalty cases and, under the Idaho Constitution ... to those cases which are "out of proportion to the gravity of the

1. Although fifteen years old at the time of these crimes, Jenkins was automatically prosecuted as an adult. *See* I.C. § 20-509.

2. After sentencing, Jenkins filed an I.C.R. 35 motion. The district court granted the motion insofar as it pertained to a request to correct the calculation of credit for time served. However, the motion was denied insofar as it pertained to a reduction of Jenkins' sentence. The partial denial of the Rule 35 motion is not an issue in the instant appeal.

offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis of the [E]ighth [A]mendment urged by Justices Kennedy, O'Connor, and Souter in *Harmelin.*

*Brown,* 121 Idaho at 394, 825 P.2d at 491. Therefore, this Court must first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *Robertson,* 130 Idaho at 289, 939 P.2d at 865. The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay,* 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct.App.1993).

■ Jenkins pled guilty to second degree murder and robbery. Idaho Code Section 18–4004 states that second degree murder "is punishable by imprisonment not less than ten (10) years and the imprisonment may extend to life." The permissible sentence for robbery is not less than five years, extending to life. I.C. § 18–6503. Jenkins asserts that his fixed sentence of fifteen years for second degree murder and concurrent fixed ten-year sentence for robbery are grossly disproportionate and, thus, would shock the conscience of reasonable people. Jenkins argues that because "of the nature of the felony murder rule, it is essential to look to the behavior of [Jenkins] in understanding the offense that he committed." However, Jenkins pled guilty to second degree murder, I.C. § 18–4003(g), not to felony murder, I.C. § 18–4003(d).

Jenkins urges this Court to consider that he did not participate in the planning of the robbery of the store, "rode meekly in the back of Shanahan's car as the trip began[,] and participated in a limited fashion" in the discussion of the robbery. Jenkins also argues that because he has shown remorse, the sentences constitute cruel and unusual punishment. According to Jenkins, he was included in Shanahan's scheme at the last minute and was not informed that Shanahan was going to kill the victim. Even taking those arguments into consideration however, the facts paint a different picture detailing Jenkins' participation in the crime committed. Jenkins provided the weapons for the group, including the one used by Shanahan to murder the victim. After procuring those weapons, Jenkins, Shanahan, and Lundquist said goodbye to one of their friends. Jenkins testified that at that point he realized he did not want to go with Shanahan and Lundquist. However, instead of staying with the friend, Jenkins went along.

Jenkins, Shanahan and Lundquist then went to the Lundquist residence. Jenkins assisted in sawing off the weapons and, when one shotgun malfunctioned, returned with Shanahan and Lundquist to his home to get another weapon. On the way to the Grant Store, Shanahan drove, Lundquist rode in the front, and Jenkins rode in the back. Jenkins testified that the music playing in the car was so loud that he could not hear the conversation that Shanahan and Lundquist were having. However, after Jenkins inquired and the music was turned down, Jenkins was told that his part in the robbery would be to go in and distract the clerk, while Shanahan robbed the store and Lundquist waited in the car. According to Jenkins, Lundquist requested a shotgun so that he could shoot any witnesses that came upon the robbery scene. Although refusing to shoot anyone, Jenkins handed Lundquist that weapon and did not object to Lundquist's plan. Yet another opportunity for Jenkins to withdraw from participation in this crime was lost due to Jenkins' inaction.

Finally, fully aware of Lundquist's plan to shoot any witnesses who approached the store, Jenkins entered the store in order to distract the victim. When the victim saw Jenkins she smiled at him, and Jenkins smiled back. Shanahan then entered the store. Jenkins testified that he saw that Shanahan was wearing gloves and was armed with the .22 caliber rifle that Jenkins had provided. However, Jenkins did nothing to warn the victim. Jenkins watched Shanahan approach to within three feet of the victim. Jenkins stood silently by while Shanahan raised the rifle and hesitated. At this point, instead of urging Shanahan not to commit this heinous act, or warning the victim, Jenkins simply turned his head while Shanahan fired the rifle, killing the victim. Rather

than attempting to assist the victim, Jenkins proceeded to steal beer from the store.

Under these circumstances, even in view of Jenkins' relative level of participation in the planning of the crimes, we cannot say that the sentences are out of proportion to the gravity of the offenses or are such as to shock the conscience of reasonable people. Indeed, the seriousness of one of the offenses to which Jenkins pled guilty, homicide, mandates a punishment in the form of a substantial prison sentence. *State v. Whiteley*, 132 Idaho 678, 680, 978 P.2d 238, 240 (Ct.App. 1999). *See also State v. Hooper*, 119 Idaho 606, 609, 809 P.2d 467, 470 (1991). Consequently, it is unnecessary to conduct any further proportionality review. *See Brown*, 121 Idaho at 394, 825 P.2d at 491.[3]

**B. Sentences**

Jenkins also argues that the sentences are unreasonable. Thus, Jenkins contends that the district court abused its discretion when it imposed the sentences.

■■■ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v.. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

■■■ Jenkins argues that "it is abundantly evident that a fifteen[-]year mandatory minimum sentence is far more than would be required to protect the public interest and any possible future harm . . . given [Jenkins'] personal history and actions in connection with this offense." He contends that his offense "consists largely of acceding to the peer pressure invitation of the other co-defendants to accompany them on a trip to Las Vegas." Essentially, Jenkins argues that his role in these crimes was that of a follower.[4] During appellate oral argument, the state asserted that the argument that Jenkins was a follower was not a mitigating factor in this particular case because it proves that he may be prone to follow again in similar situations. In *State v. Burnight*, 132 Idaho 654, 978 P.2d 214 (1999), the Supreme Court specifically relied on the fact that Burnight was a follower when it affirmed the district court's denial of Burnight's Rule 35 motion. This case is strikingly similar to *Burnight* insofar as Jenkins allowed Shanahan and Lundquist to convince him to commit these crimes. Thus, even if the Court were to characterize Jenkins' role as one of acceding to peer pressure, such a characterization does not result in this Court concluding that the sentences in this case were an abuse of discretion.

Moreover, this Court disagrees with Jenkins' characterization of his role. This case presents the senseless and unprovoked murder of Fidela Tomchak. Although he was not actively involved in the planning of this crime, as detailed above, Jenkins was more than a mere observer and chose to take an active role in effectuating it. Jenkins procured the weapon used to kill the victim. He handed Lundquist a loaded weapon, as Lund-

---

3. The Court also declines Jenkins' invitation to compare his sentences to those of his co-defendants. Such a comparison is unnecessary because Jenkins has failed to demonstrate that his sentence is grossly disproportionate to the crimes he committed. Moreover, each co-defendant played a different role and each was sentenced for different crimes. Thus, any comparison to the sentences received by Jenkins' co-defendants would be inappropriate.

4. Indeed, at sentencing, the prosecutor characterized Jenkins' role in these crimes as that of an audience at a puppet show.

quist requested, for use in the event that any witnesses approached the store. Jenkins agreed to enter the store and distract the victim while Shanahan entered. Jenkins saw Shanahan enter the store wearing gloves and carrying a rifle. Jenkins stood by silently as Shanahan raised the rifle, hesitated, and then shot the victim. Then, rather than rendering assistance to the victim, Jenkins instead proceeded to take beer, leave the store, and flee the scene.

■ When it imposed Jenkins' sentences the district court extensively considered all of the goals of sentencing. The district court specifically referred to the testimony of Dr. Beaver regarding the neuropsychological evaluation that he performed on Jenkins. Doctor Beaver testified that he could not guarantee that Jenkins would not commit another crime. Doctor Beaver also stated that his testimony focused primarily on rehabilitation. With regard to the protection of society, the district court expressed concern that Jenkins participated in the robbery by distracting the victim and watching, without protest, as Shanahan raised his gun, momentarily lowered it, raised it again, and shot the victim. The district court found that a period of incarceration would "protect society from further complicity in such actions" by Jenkins. The primary consideration in sentencing is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. *State v. Hunnel,* 125 Idaho 623, 873 P.2d 877 (1994); *State v. Pederson,* 124 Idaho 179, 857 P.2d 658 (Ct.App.1993). Therefore, the district court properly considered the paramount goal of sentencing in this case.

Insofar as deterrence is concerned, the district court recognized that society "has determined that the taking of another human life is the most serious violation of societal norms for which the most severe sanction . . . may be imposed." Questioning whether anyone but Jenkins would be deterred by the sentences imposed, the district court found that "neither the act of murder, nor any complicity in such an act can be tolerated in any civilized society." Thus, the district court properly considered the deterrent ef-

fect of its sentences. The district court also addressed the goal of rehabilitation. It recognized that Dr. Beaver testified that Jenkins' likelihood of rehabilitation was positive. However, the district court found that such a determination could be better made after the passage of time.

Finally, the district court addressed the goal of punishment. It considered the difficulty of the sentencing decision in this particular case. The district court found that, when Jenkins saw Shanahan enter the store with a rifle, walk to within three feet of the victim, and raise the rifle, Jenkins could no longer claim that he did not know Shanahan would shoot the victim. The district court also determined that the "very nature of the crime evidenced no mercy to the victim." Thus, the district court properly considered the goal of punishment when it imposed the sentences in this case.

■ Therefore, the district court carefully considered all the appropriate sentencing factors, and weighed the evidence before it imposed the sentences in this case. In reviewing a sentence, we will not substitute our view for that of the sentencing judge where reasonable minds might differ. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). *See also State v. Cross,* 132 Idaho 667, 671, 978 P.2d 227, 231 (1999) (Appellate courts will set aside the sentence only where reasonable minds could not differ as to the excessiveness of the sentence.). Based on the record before this Court, we cannot conclude that the district court abused its discretion.

## III.

## CONCLUSION

We hold that the unified life sentence, with fifteen years fixed, for second degree murder, and the concurrent unified life sentence, with ten years fixed, for robbery are not cruel and unusual. Moreover, we hold that the district court did not abuse its discretion with it imposed the sentences in this case. Therefore, the concurrent unified life sentences, with fifteen years fixed and ten years

fixed, respectively, for second degree murder and robbery, are affirmed.

Judge LANSING, and Judge SCHWARTZMAN, concur.