[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 767 
This case was originally assigned to a judge on this court on October 22, 1998, but the submission was set aside pending resolution of postconviction proceedings. It was resubmitted on November 30, 1999.
Following a jury trial, Theresa Wilson was convicted of distribution of a controlled substance and of trafficking in morphine after she sold Valium, Fiorinal, and liquid morphine to an undercover police officer. See §§ 13A-12-211 and 13A-12-231(3)(d), Ala. Code 1975. In the distribution case, Wilson was sentenced to two years' imprisonment; that sentence was suspended. Two five-year enhancements were added to that sentence, because the sale occurred within three miles of a school campus and a public housing project. §§ 13A-12-250 and -270, Ala. Code 1975. In the trafficking case, Wilson was sentenced to a mandatory term of life imprisonment without parole. § 13A-12-231(3)(d), Ala. Code 1975.[1]
The sentences were to run concurrently. *Page 768 
This is a case of first impression. Never before in this State has a first-time drug offender been sentenced to life in prison without the possibility of parole pursuant to § 13A-12-231(3)(d), Ala. Code 1975. Wilson's guilt is not at issue; her sentence is. The basic constitutional guarantee against cruel and unusual punishment is at issue.
Both the State and Wilson rely on the same United States Supreme Court case, Harmelin v. Michigan, 501 U.S. 957 (1991), as being dispositive of this important question. We conduct our review of this case with a full awareness that, "Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances." United States v. Mendenhall,446 U.S. 544, 561 (1980) (Powell, J., concurring in part and concurring in the judgment), quoted in Harmelin, 501 U.S. at 1003 (Kennedy, J., concurring in part and concurring in the judgment).
The underlying facts in the case are not in dispute. Theresa Wilson sold Valium and Fiorinal tablets to an undercover police officer for $90. The officer asked Wilson whether she could obtain any other substances, and she asked the officer if he would be interested in liquid morphine. She told the officer that the morphine belonged to a neighbor, but that she was going to try to sell it for her. Wilson asked the officer how much the morphine might be worth on the street. They discussed price, and Wilson retrieved the bottle of liquid from her neighbor.[2] When the officer asked Wilson how she knew what was in the bottle, she told him that the prescription label was still on the bottle, and that the label read "Morphine-Eli."
The officer asked Wilson how much money she wanted for the morphine. Wilson said she would give $70 to the neighbor, and she wanted to make $80 on the sale, so she would sell it for $150. The officer gave Wilson $110, which was all he had in his possession, and he told her he would return to pay the remainder. Tests revealed that the tablets Wilson sold to the officer were diazepam and butalbital, which are controlled substances. The bottle was found to contain 97.8 grams of a liquid mixture containing morphine. Wilson testified at trial that she had been addicted to drugs since 1991, and she admitted selling the controlled substances to the undercover officer. She said that she first sold him medication that had been prescribed for her, and then she obtained the morphine from her neighbor and sold it to the officer.
While this appeal was pending, the appellate proceedings were stayed, and Wilson filed a Rule 32, Ala.R.Crim.P., petition challenging the mandatory sentence. Evidence presented at the hearing on the petition established that Wilson was the only inmate in Alabama's prison population serving a sentence of life imprisonment without parole for her first drug offense. *Page 769 
(Supp.R.I-T. 24-25; Supp.R.II. 38, 77-83.)[3] Testimony also established that data from the Sentencing Institute[4] indicated that only three other people had been convicted of the same offense and, whether as the result of a plea bargain or some other arrangement, their sentences had been less than life imprisonment without parole. (Supp.R.I-T. 34-36)
From its review of the evidence presented at trial and at the Rule 32 proceedings, the circuit court found that Wilson was 28 years old at the time of the offense, that she testified that she had been addicted to drugs since 1991, and that she was married and had two young children. (Supp.R.I-C. 22-23.)[5] The court further found that Wilson was the only person without a prior felony conviction who was serving a sentence of life imprisonment without parole in the Alabama prison system for a noncapital offense. Finally, the court found that only three other people were serving sentences for convictions violating § 13A-12-23(3)(d), Ala. Code 1975, and that each one had received a sentence of less than 25 years. The court stated that it was "sympathetic" to Wilson's argument, that her sentence of life imprisonment without parole for this first offense would have, under Solem v. Helm, 463 U.S. 277 (1983), constituted cruel and unusual punishment.[6] The court determined, however, that it had no jurisdiction to review a sentence when the punishment imposed was within the limits set by the Legislature, as was the case here. It also stated that Solem had been overruled by Harmelin v. Michigan, 501 U.S. 957
(1991). (Supp.R.I-C. 24-26.) The circuit court denied the petition, and the case was resubmitted for appellate review. In this Court, Wilson continues to challenge the imposition of the mandatory sentence of life imprisonment without parole, imposed pursuant to § 13A-12-231(3)(d), Ala. Code 1975. She argues that the statute, as applied to her, violates Art. I, § 15, of the Alabama Constitution of 1901, and the Eighth Amendment to the United States Constitution.
 I.
The State of Alabama argues that the issue was not preserved for review and that it is, therefore, not now properly before this Court. We disagree.
Although this case is not before us in the typical procedural posture, it is before us in a procedural sequence that this Court has sanctioned. Wilson originally appealed from the mandatory sentence of life imprisonment without parole. While her appeal was pending, Wilson filed a Rule 32, Ala.R.Crim.P., petition in the circuit court challenging the mandatory sentence. She then filed in this Court a "motion to remand," requesting this Court to stay the pending appeal and transfer *Page 770 
jurisdiction to the circuit court, pursuant to Barnes v. State,621 So.2d 329 (Ala.Crim.App. 1992), to enable the lower court to dispose of the Rule 32 petition. In Barnes, this Court established the procedure to be followed when a defendant files a Rule 32 petition while a direct appeal is pending in this Court. This Court determined that, in such circumstances, it could notify the circuit court to hold the Rule 32 petition in abeyance pending the outcome of the appeal.
 "Or the appellate court may remand, thus staying the appeal of the petitioner's conviction and transferring jurisdiction to the circuit court to adjudicate the Rule 32 petition. After adjudication, a return to remand would be submitted to this court, and the parties would be allowed to submit issues for review of the circuit court's action on the Rule 32 petition."
621 So.2d at 333.
Under the authority of Barnes, this Court granted Wilson's motion, stayed the appeal, and transferred jurisdiction of the cause to the circuit court for adjudication of the Rule 32 petition. This Court ordered the circuit court to dispose of the petition, and ordered the court reporter to supplement the record on appeal with a transcript of the Rule 32 proceedings. Following a hearing,[7] the circuit court denied the petition, finding that it had no jurisdiction to review the sentence because the sentence was within the limits established by the statute.
After the record of the Rule 32 proceedings was filed, this Court, citing Barnes v. State, supra, entered an order granting Wilson seven days to advise this Court whether she intended to raise any Rule 32 petition issues in this appeal.[8] Wilson notified this Court that she intended to raise Rule 32 issues in this appeal, and she requested that this Court set a briefing schedule, which it did. Wilson and the State filed supplemental briefs addressing the evidence and the claims raised in the Rule 32 proceeding.
Based on the foregoing, we find no support for the State's assertion that the issue raised on appeal was not properly preserved. Although the case did not follow the traditional course of an appeal following a conviction, the course it did follow was approved and sanctioned by this Court in Barnes[9] and in this case. The parties were permitted to address fully in this Court all of the claims raised in the court below.[10] Therefore, the issue regarding *Page 771 
the propriety of Wilson's sentence was clearly preserved for this Court's review.
 II.
Wilson was convicted of violating § 13A-12-231(3)(d), Ala. Code 1975, which provides, in pertinent part:
 "Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, four grams or more of any morphine . . ., or four grams or more of any mixture containing any such substance, is guilty of a felony, which felony shall be known as `trafficking in illegal drugs.' If the quantity involved:
". . . .
 "d. Is 56 grams or more, the person shall be sentenced to a mandatory term of imprisonment of life without parole."
Wilson argues that this statute, as applied to her case, violated Article I, § 15, of the Alabama Constitution, and the Eighth Amendment to the United States Constitution. Article I, § 15, of the Alabama Constitution provides "[t]hat excessive fines shall not be imposed, nor cruel or unusual punishment inflicted." The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
At the outset, we acknowledge that determinations regarding the punishments to be imposed for different crimes are purely legislative.E.g., Rummel v. Estelle, 445 U.S. 263, 275-76, 282-84 (1980); Rocker v.State, 443 So.2d 1316, 1322 (Ala.Crim.App. 1983). We also acknowledge and affirm the oft-stated rule that we generally will not review sentences imposed within statutorily prescribed limits. E.g., Evans v. State,794 So.2d 415439 (Ala.Crim.App. 2000). In Eldridge v. State, 418 So.2d 203,207 (Ala.Crim.App. 1982), we stated:
 "While this court may rule a fine or sentence excessive, the separation of powers doctrine forces this court not to substitute its own judgment for that of the legislature unless those constitutional guarantees of the Eighth Amendment to the U.S. Constitution or of Article I, § 15, 1901, Alabama Constitution are clearly violated. Cabble v. State, 347 So.2d 546 (Ala.Cr.App.), cert. denied, 347 So.2d 551
(Ala. 1977)."
Review of the foregoing constitutional provisions and of state and federal caselaw interpreting and applying those provisions is necessary to resolve the issue Wilson presents. Based on the legal principles discussed below, and on the specific facts of this case, we find this to be one of the rare occasions when constitutional principles have been violated and appellate review of a sentence that is within statutory limits is not only warranted, but is required.
 A. United States Supreme Court and Proportionality Review
An understanding of the United States Supreme Court's less-than-consistent interpretation and application of Eighth Amendment proportionality principles is instructive, relevant, and necessary to the proper resolution of this case.
In Weems v. United States, 217 U.S. 349 (1910), the Supreme Court discussed Eighth Amendment proportionality in sentencing as it related to Weems's conviction for falsifying a public document, and the mandatory sentence to cadena temporal.[11] After an exhaustive *Page 772 
review of existing precedent, the Court concluded that punishment bycadena temporal was inconsistent with constitutional protections afforded by the Bill of Rights. Id. at 382. The Court noted that the prohibition of cruel and unusual punishment was directed against torturous punishments and "against all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged." Id. at 371 (quoting O'Neil v. Vermont, 144 U.S. 323, 339-40 (1892) (Field, J., dissenting)).
In Rummel v. Estelle, 445 U.S. 263 (1980), the Court observed that, in noncapital cases, successful challenges to the proportionality of sentences were "exceedingly rare," and went on to uphold a Texas recidivist statute that mandated a sentence of life imprisonment without parole. The dissenting Justices stated that certain objective factors should be used to determine the proportionality of a sentence to a crime, including: "(i) the nature of the offense . . .; (ii) the sentence imposed for commission of the same crime in other jurisdictions . . .; (iii) the sentence imposed upon other criminals in the same jurisdiction. . . ." Id. at 295 (Powell, J., dissenting). The majority, however, rejected this proposition. Id. at 281-82 n. 27.
In Hutto v. Davis, 454 U.S. 370 (1982), the Court rejected an Eighth Amendment challenge to a sentence of 40 years' imprisonment and a $20,000 fine for convictions for the possession and distribution of marijuana. The Court disapproved of the proportionality analysis applied by the lower court, and noted that the lower court had been erroneously guided by the factors and analysis discussed by the dissenters in Rummel v.Estelle, supra. In its summary reversal of the grant of habeas corpus relief in Davis, the Court then stated:
 "In short, Rummel stands for the proposition that federal courts should be `reluctan[t] to review legislatively mandated terms of imprisonment,' [445 U.S.] at 274, 100 S.Ct., at 1139, and that `successful challenges to the proportionality of particular sentences' should be `exceedingly rare,' id. at 272, 100 S.Ct., at 1138. By affirming the District Court decision after our decision in Rummel, the Court of Appeals sanctioned an intrusion into the basic line-drawing process that is `properly within the province of legislatures, not courts.' Id., at 275-276, 100 S.Ct., at 1139-1140."
454 U.S. at 373-74 (footnote omitted).
Solem v. Helm, 463 U.S. 277 (1983), represented a significant departure from Rummel and Davis. Helm was convicted in a South Dakota state court for issuing a "no account" check, and was sentenced as a recidivist to life imprisonment without parole. The federal district court found the sentence to be harsh, but, relying on Rummel, it denied habeas relief. The United States Court of Appeals for the Eighth Circuit reversed, distinguishing Helm's sentence from Rummel's sentence because Rummel's sentence included the possibility of parole. Helm v. Solem, 684 F.2d 582
(8th Cir. 1982). The Court of Appeals considered Helm's offenses, his sentence, and the sentence imposed for the same crime in other jurisdictions, and concluded that Helm's sentence was "grossly *Page 773 
disproportionate" to the crime, and that it violated the Eighth Amendment. Id. at 587.
The United States Supreme Court affirmed the Eighth Circuit's ruling.463 U.S. 277 (1983). Justice Powell, writing for the majority, stated, "The constitutional principle of proportionality has been recognized explicitly in this Court for almost a century." 463 U.S. at 286 (footnote omitted). The Court discussed its prior decisions on proportionality, including Rummel, and noted, "When prison sentences became the normal criminal sanctions, the common law recognized that these, too, must be proportional. See, e.g., Hodges v. Humkin, 2 Bulst. 139, 140, 80 Eng.Rep. 1015, 1016 (K.B. 1615) (Croke, J.) (`[i]mprisonment ought always to be according to the quality of the offence')." Id. at 285.
The Court in Solem v. Helm further stated:
 "In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional. As the Court noted in Robinson v. California, 370 U.S. [660], at 667, 82 S.Ct. [1417], at 1420 [(1962)], a single day in prison may be unconstitutional in some circumstances."
463 U.S. at 290 (footnote omitted). The Court further noted that, because legislatures and sentencing courts are accorded substantial deference in establishing sentences and imposing sentences, respectively, reviewing courts would rarely conduct an "extended analysis to determine that a sentence is not constitutionally disproportionate." 463 U.S. at 290 n. 16.
The Court then explained that, when considering disproportionality claims, reviewing courts should be guided by objective criteria "that our cases have recognized." 463 U.S. at 290. Those factors should include: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463 U.S. at 292. The Court analyzed Helm's sentence using the foregoing factors and concluded:
 "Applying objective criteria, we find that Helm has received the penultimate sentence for relatively minor criminal conduct. He has been treated more harshly than other criminals in the State who have committed more serious crimes. He has been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single State. We conclude that his sentence is significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment."
463 U.S. at 303 (footnote omitted).
The United States Supreme Court's most recent decision on Eighth Amendment proportionality review is Harmelin v. Michigan, 501 U.S. 957
(1991), and it reflects the Court's inability to reach a clear consensus on the issue. Harmelin, who had no prior criminal convictions on his record, was convicted of possessing 672 grams of cocaine; he was sentenced to a mandatory term of life imprisonment without parole. The United States Supreme Court upheld the sentence against an Eighth *Page 774 
Amendment proportionality challenge, but the opinions issued by the Justices of the Court evidenced their stark disagreement regarding the existence of a guaranty under the Eighth Amendment that a sentence will be proportional. In brief and in oral argument in this case, both the State, whose position was ultimately accepted by the circuit court, Supp.R.I-C. 8-10, and Wilson relied upon Harmelin as being dispositive of this important constitutional issue. A very careful reading and analysis of Harmelin is essential to the determination whether Wilson must spend the balance of her life in prison.
Only two of the Justices in Harmelin refused to recognize a general proportionality guarantee in the Eighth Amendment. 501 U.S. at 965, 994
(Parts I and III of the opinion by Justice Scalia; as to those parts, only Chief Justice Rehnquist concurred). Justice Scalia determined that Eighth Amendment proportionality review had been "an aspect of our death penalty jurisprudence, rather than a generalizable aspect of Eighth Amendment law. We think that is an accurate explanation, and we reassert it." Id. at 994. Even Justice Scalia and Chief Justice Rehnquist acknowledged, however, "This is not to say that there are no absolutes; one can imagine extreme examples that no rational person, in no time or place, could accept." 501 U.S. at 985 (Part II of opinion by Justice Scalia; as to that part, only Chief Justice Rehnquist concurred). Justices Kennedy, O'Connor, and Souter recognized proportionality as a component of the Eighth Amendment, but did not conclude that Harmelin's sentence was disproportionate to his crime. 501 U.S. at 996-97 (Kennedy, J., concurring in part and concurring in the judgment). The four dissenting Justices opined that a proportionality review was required, and that Harmelin's sentence was unconstitutionally disproportionate to his crime. 501 U.S. at 1013, 1027 (White, J., dissenting);501 U.S. at 1027 (Marshall, J., dissenting). Consequently, a reasonable interpretation of the precedential value of the Harmelin decision is vital to this case.
Five Justices agreed that mandatory penalties might be cruel and severe but they are not "unusual," as that term is used in the legal sense, and they rejected Harmelin's challenge to his sentence. 501 U.S. 994-95.[12]
Justice Kennedy wrote a separate concurrence setting forth his Eighth Amendment proportionality analysis, noting that it differed from Justice Scalia's analysis. Justice Kennedy acknowledged that the Court's decisions on proportionality had not been completely clear or consistent, but he said that they could be reconciled. He also stated, "Regardless of whether Justice Scalia or Justice White has the best of the historical argument, . . . stare decisis counsels our adherence to the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." Id. at 996 (Kennedy, J., concurring in part and concurring in result). Justice Kennedy discussed the common principles that define the scope of proportionality review, then stated:
 "All of these principles — the primacy of the legislature, the variety of legitimate *Page 775 
 penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors — inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are `grossly disproportionate' to the crime. Solem, [463 U.S. 277, 288, 303 (1983)]."
Id. at 1001.
Justice Kennedy concluded that the three-part test employed in Solemv. Helm, 463 U.S. 277 (1983), need not be applied in every case challenging the proportionality of a sentence on Eighth Amendment grounds. He determined, rather, that the Court's prior decisions established "that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005. Justice Kennedy further explained, "The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime." Id.
Justice Kennedy determined that a comparison of Harmelin's crime to his sentence did not indicate a gross disproportionality, and that, therefore, no intra- or interjurisdictional analysis was required. Id. Justice Kennedy noted that although Harmelin had no prior felony convictions, he was found in possession of over 1.5 pounds of cocaine, which could produce up to 65,000 individual doses. Id. at 1002. He further noted that Harmelin possessed not only a large amount of undiluted cocaine, but also "several other trappings of a drug trafficker, including marijuana cigarettes, four brass cocaine straws, a cocaine spoon, 12 Percodan tablets, 25 tablets of Phendimetrazine Tartrate, a Motorola beeper, plastic bags containing cocaine, a coded address book, and $3,500 in cash." Id. at 1008. He concluded that the mandatory sentence of life imprisonment without parole did not violate the Eighth Amendment. Id. at 1009.
Justice White, in his dissent, asserted, "Not only is it undeniable that our cases have construed the Eighth Amendment to embody a proportionality component, but it is also evident that none of the Court's cases suggest that such a construction is impermissible."501 U.S. at 1013 (White, J., dissenting). Justice White found that the three-part proportionality analysis set forth in Solem v. Helm, 463 U.S. 277 (1983), "has worked well in practice." 501 U.S. at 1015. He stated further that, contrary to Justice Scalia's suggestion, "the fact that a punishment has been legislatively mandated does not automatically render it `legal' or `usual' in the constitutional sense. Indeed, as noted above, if this were the case, then the prohibition against cruel and unusual punishments would be devoid of any meaning." Id. at 1017.
Justice White observed that, without proportionality review, defendants receiving extreme sentences would have no recourse. Of Justice Scalia's analysis, he stated:
 "[H]e provides no mechanism for addressing a situation such as that proposed in Rummel [v. Estelle, 445 U.S. 263
(1980)], in which a legislature makes overtime parking a felony punishable by life imprisonment. He concedes that `one can imagine extreme examples' — perhaps such as the one described in Rummel — `that no rational person, in no *Page 776 
 time or place, could accept,' but attempts to offer reassurance by claiming that `for the same reason these examples are easy to decide, they are certain never to occur.' Ante, at 985-986. This is cold comfort indeed, for absent a proportionality guarantee, there would be no basis for deciding such cases should they arise."
Id. at 1018 (emphasis added).
The dissenting Justices found no reason to overrule or limit Solem
and, upon application of the Solem factors, determined that Harmelin's sentence "fails muster under Solem and, consequently, under the Eighth Amendment to the Constitution." Id. at 1021.
Given the fact that Justice Kennedy and those joining the plurality opinion noted that Harmelin had the trappings of a drug baron and enough pure cocaine to yield up to 65,000 individual doses, it is logical to conclude that these Justices, and the four dissenting Justices who found the sentence to violate the Eighth Amendment, would find Wilson's case to fall within the very limited group of cases in which the sentence truly is grossly disproportionate to the crime. It is further reasonable to conclude that, upon review of Wilson's sentence, those Justices would reach a different result than did the plurality in Harmelin. Wilson was a first-time drug offender who shares none of the characteristics of experienced, "successful" drug traffickers. There was no evidence that the amount of morphine she sold would yield thousands of individual doses, nor that she possessed drug paraphernalia, a beeper, coded address book, or a large amount of cash. To the contrary, Wilson was not initially in possession of the morphine, and she obtained it from a neighbor only after the undercover officer asked her if she had any additional drugs to sell. She sold it for her neighbor and shared the money with her. Wilson had no idea of the street value of the drug, and she sold the drug, in part, on credit. While the principles in Harmelin
govern our determination of this case, they do not command the same result.
 B. Federal Circuit Courts and Proportionality Review
Appellate courts reviewing claims regarding unconstitutionally excessive sentences have not uniformly interpreted Harmelin, or determined how that decision affects the continuing applicability of the three-factor test announced in Solem. Many federal courts of appeal have determined that Justice Kennedy's concurring opinion is controlling, and have held, therefore, that the Eighth Amendment guarantees some degree of sentencing proportionality. These courts generally have interpretedHarmelin to narrow the proportionality analysis adopted in Solem, and they have held that intra- and interjurisdictional analyses are warranted only if the court first determines that the sentence imposed is grossly disproportionate to the offense committed. E.g., United States v.Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000); United States v. Marks,209 F.3d 577, 583 (6th Cir. 2000) ("The Sixth Circuit has adopted the `narrow proportionality principle' of Harmelin. See United States v.Hopper, 941 F.2d 419, 422 (6th Cir. 1991). Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment.");Hawkins v. Hargett, 200 F.3d 1279, 1282 (10th Cir. 1999); United Statesv. Cardoza, 129 F.3d 6, 18 (1st Cir. 1997); United States v. Frieberger,28 F.3d 916, 920 (8th Cir. 1994).
Some federal courts of appeal, however, continue to follow the three-part test announced in Solem, as if Harmelin did not limit the holding of that case or support a *Page 777 
narrower approach to sentencing proportionality. The United States Court of Appeals for the Fourth Circuit, in United States v. Kratsas, 45 F.3d 63,67 (4th Cir. 1995), noted that it was somewhat unclear, in light ofHarmelin, whether the three-part test of Solem applied in noncapital cases; that court stated, "[T]he continuing applicability of the Solem
test is indicated by the fact that a majority of the Harmelin Court either declined expressly to overrule Solem or explicitly approved ofSolem. Indeed, the Fourth Circuit has continued to use the Solem test in conducting proportionality reviews under the Eighth Amendment for cases involving life sentences or the death penalty." 45 F.3d at 67. See alsoHenry v. Page, 223 F.3d 477, 481-82 (7th Cir. 2000) ("Since the divided decision in Harmelin, several courts have questioned whether Solem
survives. See, e.g., United States v. Kratsas, 45 F.3d 63, 67 (4th Cir. 1995). . . . Our court has adhered to Solem and we continue to recognize some degree of sentencing proportionality in the Eighth Amendment. . . . We therefore accept Solem as clearly established federal law as required by 28 U.S.C. § 2254(d)(1).").
 C. Alabama and Proportionality Review 1. Alabama
Alabama courts have recognized the importance of proportionality in sentencing. "Proportionality of sentence is certainly a vital constitutional guarantee." Anderson v. State, 455 So.2d 957, 958
(Ala.Crim.App. 1984) (citing Solem v. Helm). In Ex parte Maddox,502 So.2d 786 (Ala. 1986), the Alabama Supreme Court noted that the state's appellate courts are generally prohibited from reviewing sentences that are within the limits prescribed by statute. The Court further stated:
 "However, the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights.
 "The United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), recognized that reviewing courts should grant substantial deference to the authority of the legislatures in determining the kinds and limits of punishment for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. Yet, the sentence should be proportionate to the crime."
Id. at 789-90 (citation omitted). The Court remanded the cause for consideration of Maddox's sentence, in light of Solem. Id. at 790.
On remand, this Court declined to apply the three factors set forth inSolem, and adopted, instead, the reasoning of United States v. Rhodes,779 F.2d 1019, 1027-1028 (4th Cir. 1985), interpreting Solem to require an "extensive proportionality analysis" only when a defendant was sentenced to life imprisonment without parole. Maddox v. State, 502 So.2d at 792-93. This Court found Maddox's 15-year sentence for trafficking in marijuana to be constitutional and not disproportionate, and declined to engage in the more extensive analysis advocated by Solem. Id. at 793.
We note that, although this Court has recognized the importance of proportionality review, it has not consistently interpreted and appliedHarmelin. In Carroll v. State, 599 So.2d 1243, 1243 (Ala.Crim.App. 1992), Judge Taylor, writing for the court, stated that Solem had been overruled by Harmelin. In Dumas v. State, 611 So.2d 426, 428
(Ala.Crim.App. 1992), Judge Bowen noted in dicta that the United States Supreme Court in Harmelin could not agree on a proportionality test, *Page 778 
but that Justice Kennedy's concurrence, which he said was dispositive, recognized that a narrow proportionality principle remained even afterHarmelin.
 2. Other States
A review of the decisions of appellate courts of other states indicates that many have adopted and applied the narrow proportionality analysis set forth by Justice Kennedy in his concurring opinion in Harmelin.E.g., State v. Milk, 607 N.W.2d 14, 18-19 (S.D. 2000); State v. Jenkins,133 Idaho 747, 992 P.2d 196, 198-99 (Idaho Ct. App. 2000); Hicks v.State, 15 S.W.3d 626, 632 (Tex.Crim.App. 2000); State v. Herrera,993 P.2d 854, 866-67 (Utah 1999).
 3. Conclusion
Based on our review of the foregoing state and federal cases, we now hold, as Judge Bowen recognized in Dumas v. State, 611 So.2d 426
(Ala.Crim.App. 1992), that Justice Kennedy's plurality opinion inHarmelin requires that we apply a narrow proportionality review; this proportionality analysis governs our review of Wilson's sentence in this case.
 D. Application of Proportionality Principles
Application of Harmelin mandates that we make a threshold determination in this case by considering whether the mandatory sentence of life imprisonment without parole imposed in Wilson's case is grossly disproportionate to her crime. To perform this analysis, we must consider the gravity of the offense and the harshness of the punishment. Solem, 463 U.S. at 290-91. The United States Supreme Court noted in Solem that no single factor determines when a sentence is grossly disproportionate, and it offered a nonexhaustive list of factors to be considered when a court is assessing the severity of a crime. These factors include consideration of the circumstances of the crime, the harm caused to the victim or to society, the culpability of the offender, and the offender's motive in committing the crime. Id. at 290-94.
At the time of the offense, Theresa Wilson was 28 years old; this was her first offense. She obtained from her neighbor a liquid substance containing morphine and sold it to an undercover police officer for $150, in part on credit. Wilson was sentenced to life imprisonment without parole solely because she had sold more than 56 grams of the mixture, the limit set by the Legislature in its attempt to punish most severely the "drug barons" who engage in large-scale distribution of illegal drugs.
Act No. 86-534, codified at § 13A-12-231, Ala. Code 1975, under which Wilson was charged, is titled the "Drug Baron's Enforcement Act of 1986." All of the provisions of the act relate to large quantities of drugs, and the title indicates the Legislature's intent to punish severely the "drug barons," i.e., those who habitually trade in and profit from dealing in large quantities of drugs. Wilson does not fit into that category. We note that, if the trafficking statute included elements that tended to connect a defendant with the activities and characteristics of the drug barons the statute intended to punish, an individual in Wilson's circumstances, who bore none of those characteristics except for selling the arbitrary amount, would not have been subject to prosecution for trafficking.
Wilson testified that she became addicted to drugs in 1991, when a doctor prescribed narcotics for her after she was diagnosed with fibromyalgia syndrome. She acknowledged that she sold some of her own medication to the undercover officer so she could pay her utility bill, and because her neighbor's children needed food. Wilson said that, when the officer *Page 779 
asked her whether she could obtain anything else, she told him that she might be able to sell him some morphine her neighbor had. Wilson was not in possession of, and initially had no intent to obtain possession of and to sell, the morphine. She did so only after the officer asked her if she could acquire something else to sell him. The evidence further established that Wilson had no knowledge of the street value of the substance. She was to pay her neighbor $70 and retain $80 for making the sale.[13] Wilson sold the morphine on credit — the officer left with the morphine without paying the full price agreed upon. In sum, there is no evidence that Wilson was engaged in any kind of continuing enterprise involving the distribution of large quantities of morphine or other illegal drugs.[14]
The penalty imposed on Wilson was a mandatory sentence of life imprisonment without parole. This sentence, the second most severe sentence available in this State (the most severe being the death penalty) precluded the trial court's consideration of the circumstances of the crime and the characteristics of the offender. We recognize that mandatory sentencing schemes are constitutional. Jemison v. State,439 So.2d 786, 787-88 (Ala.Crim.App. 1983). We further acknowledge that under the separation-of-powers doctrine our Legislature is responsible for fashioning a system of punishment for crimes committed in this State. Id. We recognize, further, as have many courts before us, that the drug problem in the United States has horrific, far-reaching effects on individuals and on society as a whole. E.g., Harmelin,501 U.S. at 1002-1003 (Kennedy, J., concurring in part and concurring in the judgment). "However, the great potential harm to society can justify such harsh treatment in all cases of distribution only `if individual traffickers may constitutionally be punished for the social harm caused by the drug traffic as a whole.' . . . Acceptance of this argument would necessarily eliminate the proportionality principle as applied to individual cases." Terrebone v. Blackburn, 624 F.2d 1363, 1370 (5th Cir. 1980), reh'g granted, 646 F.2d 997 (5th Cir. 1981) (en banc).[15]
Wilson does not challenge the punishment scheme enacted by the Legislature, and we do not address that scheme, as a whole, today. We find, however, based on our analysis of the crime Wilson *Page 780 
committed and the punishment imposed upon her, that the punishment, inthis case, was grossly disproportionate to the crime.[16] Because we find that the first factor of the Solem proportionality test has been met in this case, we must go further and conduct a full-scale proportionality review, examining the second and third Solem factors. Harmelin,111 S.Ct. at 2707.
The second Solem factor examines the punishment imposed on other offenders in the same jurisdiction. Solem, 463 U.S. at 291. Based on the testimony of a representative of the Sentencing Institute at Wilson's Rule 32 hearing, the trial court found that only three other offenders in Alabama were serving sentences for violating § 13A-12-231(3)(d), Ala. Code 1975, and none of the three was serving a sentence of life imprisonment without parole. The evidence further established, and the trial court found, that Wilson was the only noncapital offender with no prior felony convictions in the Alabama prison system who was serving a sentence of life imprisonment without parole. (Supp.R.II-C. 25.) Further, we note that a mandatory sentence of life imprisonment without parole is available for a first offender only for other trafficking offenses, and as an alternative to the death penalty in capital murder cases. §§ 13A-12-231, 13A-5-45(a), Ala. Code 1975. It is clear that Wilson's sentence is more extreme than that imposed on many other offenders in this jurisdiction.
The third Solem factor, the punishment that the offender would have received had she committed this crime in another jurisdiction, was also addressed at the Rule 32 proceeding. Wilson states that she found no reported cases from other jurisdictions involving offenders convicted of trafficking in morphine. Our research likewise revealed few reported cases from other states involving trafficking in morphine, and only one of those was affirmed on appeal. In Sussman v. Kentucky, 610 S.W.2d 608
(Ky.Ct.App. 1981), the defendant was convicted of trafficking in morphine, cocaine, and other drugs. He was given the maximum sentence of 10 years' imprisonment on the morphine conviction.
Although the parties did not analyze the laws of other states regarding the penalties for trafficking in morphine, our own research has revealed that Wilson would have received a much more lenient sentence in many other jurisdictions. For example, in Delaware, punishment of those trafficking in 50 grams or more of morphine is a mandatory minimum of 25 years' imprisonment and the imposition of a fine. Del. Code Ann. tit. 16, § 4753A(a)(3)(c) (1974). Florida authorizes a fine and a mandatory term of imprisonment of 25 years for trafficking in more than 28 grams, but less than 30 kilograms of morphine. Fl. Stat. ch. 893.135(c)(1)(c) (2000). In Georgia, trafficking in 28 or more grams of morphine leads to a mandatory minimum sentence of 25 years' imprisonment plus a fine. Ga. Code Ann. § 16-13-31(b)(3) (1999). Trafficking in 15 to 99 grams of morphine in Illinois leads to a term of imprisonment of not less than 6 *Page 781 
years or more than 30 years. 720 Ill. Comp. Stat. 570/401(a)(3)(A) (1998). The first offense of trafficking in a controlled substance in Kentucky is a Class C felony, which is punishable by imprisonment for not less than 5 years nor more than 10 years. Ky. Rev. Stat. Ann. §§218A.990 (1988). The first morphine trafficking offense in New Mexico is classified as a second-degree felony, for which the "basis sentence" is 9 years' imprisonment. N.M. Stat. Ann. §§ 30-31-20, 31-18-15 (A)(3) (1978). In South Carolina, trafficking in 28 grams or more of morphine leads to a mandatory term of imprisonment of not less than 25 years nor more than 40 years and the imposition of a fine. S.C. Code Ann. § 44-53-370(e)(3)(c) (1985). Finally, the manufacture, distribution, or delivery of morphine in Wisconsin results in a term of imprisonment of not more than 22 years and 6 months, or the imposition of a fine, or both. Wis. Stat. § 961.41(1)(a) (1999-2000). Alabama's penalty of life imprisonment without parole for the first offense of morphine trafficking is far more severe than the penalty imposed by many other jurisdictions.
 E. Conclusion
Careful analysis of the foregoing factors leads us to a conclusion rarely reached by appellate courts: the statute mandating imposition of a life without parole sentence is unconstitutional, as it is applied tothis defendant for the commission of this crime. We have not reached this conclusion lightly, but only after a thorough consideration of the specific facts of this case, an analysis of decades of United States Supreme Court decisions regarding proportionality review, a review of decisions of federal appellate courts, a review of decisions of the appellate courts of this state and other states, and a review of the punishments imposed in this and other jurisdictions for similar offenses. The decision we reach today is the only one that comports with constitutional principles. While illegal drugs pose severe problems for our State, and the Legislature is the proper branch of the government to set the punishment for trafficking offenses, we are compelled to hold that, based on the circumstances of this crime and the characteristics of this offender, the statutory mandatory minimum sentence of life imprisonment without parole is unconstitutional as applied.
The United States Court of Appeals for the Eighth Circuit recently released Henderson v. Norris, 258 F.3d 706 (8th Cir. 2001), which presents facts remarkably similar to those presented here. Henderson, who had no prior convictions, was sentenced to life imprisonment for delivering a small amount of crack cocaine for $20. The court analyzed that case as we have done here, in light of the principles set forth in the plurality opinion in Harmelin, and held that the sentence violated the Eighth Amendment. Noting that Henderson did not initiate the contact with the informant (neither did Wilson in this case), the court also noted that the amount of drugs sold was very small, and that there was no evidence of the "trappings" of the drug trade (as in Wilson's case). The court stated:
 "Based on our initial examination of the severity of the crime that Mr. Henderson committed and the harshness of the penalty that he received, we reached the preliminary conclusion that the penalty imposed in this particular case is grossly disproportionate to the crime. Our comparison of the sentence imposed in this case with other sentences imposed in Arkansas and with sentences imposed for the same or similar crime in other jurisdictions has done nothing to undermine our original conclusion: In fact we believe that the comparison provides strong support for the *Page 782 
 inference that we originally drew. We therefore conclude that Mr. Henderson's sentence violates the eighth amendment."
258 F.3d at 713. The Henderson case provides additional support for the result we were compelled to reach here.
We agree with the following statement in Justice Stevens's dissent inHarmelin:
 "[A] mandatory sentence of life imprisonment without the possibility of parole does share one important characteristic of a death sentence: The offender will never regain his freedom. Because such a sentence does not even purport to serve a rehabilitative function, the sentence must rest on a rational determination that the punished `criminal conduct is so atrocious that society's interest in deterrence and retribution wholly outweighs any considerations of reform or rehabilitation of the perpetrator.' [Furman v. Georgia, 408 U.S. 238, 306 (1972) (Stewart, J., concurring.)] Serious as this defendant's crime was, I believe it is irrational to conclude that every similar offender is wholly incorrigible."
501 U.S. at 1028 (Stevens, J., dissenting).
In light of the foregoing, we hereby reverse the trial court's denial of Wilson's Rule 32 petition, and we reverse the sentence of the life imprisonment without parole. We remand this cause to the trial court for a new sentencing hearing. Because we have struck down the statutorily mandated sentence in this case, the trial court is free to consider the totality of the circumstances, which will ensure an individualized sentence appropriate to the crime committed, and it may do so within the framework of § 13A-5-6(1), Ala. Code 1975.
REVERSED AND REMANDED.
McMillan, P.J., concurs; Wise, J., concurs specially, with opinion; Baschab and Shaw, JJ., dissent, with opinions.
[1] Wilson's indictment charged that she unlawfully sold or delivered "four grams or more of morphine, or of a mixture containing morphine," and the jury's verdict found her guilty of that specific charge. (C. 39, 47.) The trial court enhanced Wilson's sentence beyond the statutory minimum, based on evidence that she delivered more than 56 grams of a substance containing morphine, an amount that was not charged in the indictment. While Apprendi v. New Jersey, 530 U.S. 466 (2000), might have been implicated due to the fact that the indictment did not charge the amount of morphine for which Wilson was ultimately sentenced and the jury found beyond a reasonable doubt only that Wilson sold four or more grams of the substance, this Court's recent opinion in Poole v. State, [Ms. CR-99-1200, August 31, 2001] ___ So.2d ___ (Ala.Crim.App. 2001) (Cobb, J., concurring in part and dissenting in part; and joining Judge Shaw's special writing, in part), held that the circumstance leading to the enhancement of a sentence does not have to be alleged in the indictment, thus obviating any need for a discussion of the form of Wilson's indictment. This Court further held in Poole that the facts underlying the enhancement must be proved to a jury beyond a reasonable doubt, but that any error in this regard must be raised at trial or it is waived. Because this claim was not presented at Wilson's trial, it is not properly before this Court for our review.
[2] Wilson stated that the morphine had been used by her neighbor's husband as medication. (R. 224.)
[3] "Supp.R.I-T. ___" refers to the pages of the May 13, 1999, supplemental record containing the transcript of the hearing on the Rule 32 petition. "Supp.R.II. ___" refers to the pages of the July 19, 1999, supplemental record.
[4] The testimony indicates that the Sentencing Institute is affiliated with Auburn University, and that one of its functions is to conduct research and provide statistical information to attorneys and judges regarding the Department of Corrections and its inmates.
[5] "Supp.R.I-C. ___" refers to the pages of the clerk's record in the May 13, 1999, supplemental record.
[6] "This Court is sympathetic to the Petitioner's position. This Court is of the opinion that if the criteria established by Solem were still in effect this petition would meet the three-prong test established bySolem." (Supp.R.I-C. 27.)
[7] We note that the case was assigned to Judge Tommy Nail after the petition was filed and after the cause was remanded for completion of the postconviction proceedings.
[8] The May 18, 1999, order provided: "It is ordered that the appellant is hereby allowed seven (7) days from the date of this order to advise this Court whether or not she intends to raise any Rule 32 petition issues in this appeal pursuant to Barnes v. State, 621 So.2d 329
(Ala.Cr.App. 1992)."
[9] The dissenting judges urge reconsideration of the procedure established in Barnes v. State, 621 So.2d 329 (Ala.Crim.App. 1992). If, and/or when, a case squarely presents that issue to this court, it will be ripe for consideration. This case, however, does not present that issue to us. Moreover, this court, in reliance on Barnes, clearly sanctioned the procedure and invited the parties to address the issue regarding the illegality of the sentence. Overruling Barnes on the basis of this case would be fundamentally unfair to Wilson, who relied on existing caselaw and the orders of this court when she presented the issue to this court.
[10] Contrary to Judge Shaw's assertion, the claim regarding the illegality of the sentence was raised in the court below, as set forth in Judge Pearson's affidavit. (Supp.R.I-C. 57.) Because the affidavit was a part of the record (Supp.R.I-T. 6-10), resort to Rule 10(g), Ala.R.App.P., was not necessary.
[11] The Court explained that the punishment required wearing a chain attached to the ankle and the wrists, "hard and painful labor," a term of imprisonment, and a perpetual limitation on Weems's personal rights and liberties. 217 U.S. at 364.
[12] Justice Scalia, joined only by Chief Justice Rehnquist, discussed the Court's Eighth Amendment precedent in Rummel v. Estelle, 445 U.S. 263
(1980), Hutto v. Davis, 454 U.S. 370 (1982), and Solem v. Helm,463 U.S. 277 (1983), and said, "We conclude from this examination thatSolem was simply wrong; the Eighth Amendment contains no proportionality guarantee." 501 U.S. 965-66.
[13] No evidence was presented indicating the purity of the substance Wilson sold. While § 13A-12-231(3), Ala. Code 1975, prohibits possession and sale of even a mixture containing morphine, the purity of the mixture in this case would go to the gravity of the offense.
[14] Judge Shaw states that he did not find persuasive the factual distinctions that the majority makes between Wilson and Harmelin, and expresses concern "that the path the majority has taken in this case will inevitably lead this Court into making subjective personal value determinations in other cases — determinations it should not make." The factual distinctions between the crimes are, we believe, stark and highly persuasive. Unlike Wilson, a drug addict who apparently sold small quantities of drugs on occasion, Harmelin was found in possession of more than one and one-half pounds of undiluted powder cocaine, enough to produce up to 65,000 individual doses. Harmelin possessed "several other trappings of a drug trafficker," including other controlled substances, a cocaine spoon and cocaine straws, a beeper, a coded address book, and a large amount of cash. Harmelin, 501 U.S. at 1002, 1008. These factual distinctions go to the very intent of the "Drug Baron's Enforcement Act." It is the application of the relevant constitutional principles to the facts of this case, rather than a subjective personal value determination, that has directed our analysis in this case.
[15] On rehearing, the opinion of the panel was vacated, and the district court's denial of habeas relief was affirmed.
[16] We find relevant the United States Supreme Court's analysis of the gravity of Helm's offense and the harshness of the punishment. The Court said, "Helm, who was 36 years old when he was sentenced, is not a professional criminal. The record indicates an addiction to alcohol, and a consequent difficulty in holding a job. His record involves no instance of violence of any kind. Incarcerating him for life without possibility of parole is unlikely to advance the goals of our criminal justice system in any substantial way. Neither Helm nor the State will have any incentive to pursue clearly needed treatment for his alcohol problem, or any other program of rehabilitation." Solem v. Helm, 463 U.S. at 297 n. 22.